**RAY T. WHITFIELD, Petitioner**

v.

**INTERNATIONAL MOTORS CORPORATION, Respondent**

Civil No. 531/1988

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

May 17, 1989

RICHARD R. KNOEPFEL, ESQ., BRIGGS, KNOEPFEL & ROUCA, St. Thomas, V.I., *for petitioner*

KEVIN F. D'AMOUR, ESQ., PALMER & D'AMOUR, St. Thomas, V.I., *for respondent*

CHRISTIAN, *Senior Sitting Judge*

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter is now before the Court on the motion of respondent, pursuant to Rule 60 of the Federal Rules of Civil Procedure as made applicable to the Territorial Court, for an order vacating the judgment of the Court, as reflected in the opinion rendered by the Court on April 14, 1989 as amended April 21, 1989;[1] and on opposition to the motion filed by the petitioner. The motion will be denied.

### II. THE FACTS

For the factual background of this case, see our aforesaid opinion, as amended.

### III. DISCUSSION

In point 1 of the motion for reconsideration respondent states that the Court misapplied the general standard when it granted petitioner's motion for summary judgment in that there is a genuine issue as to a material fact and therefore petitioner is not entitled to judgment as a matter of law. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d., Section 2716. Respondent also cites this Court to how the Supreme Court teaches us to evaluate the record on an appeal from summary judgment, viz:

---

[1] It is not clear to us why respondent premised its motion on Rule 60 of the Federal Rules of Civil Procedure. However, given the disposition we make of its motion, this factor is of no moment.

"On summary judgment, the inference to be drawn from the underlying facts contained in such materials [affidavits, depositions, and exhibits] must be viewed in the light most favorable to the party opposing the motion," in this case the respondent. United States v. Diebold, Inc., 1962, 82 S. Ct. 993, 994; 369 U.S. 654, 655; 8 L. Ed. 2d. 176.

 The respondent says the Court erred because it failed to follow the above applicable principles of law in considering and deciding a motion for summary judgment. But respondent fails to specify where and how the Court erred. In its original brief for summary judgment, respondent itself argues on page 4 thereof, that there is no material issue of fact to be tried, and therefore the granting of summary judgment to respondent is appropriate. Respondent came to this conclusion on the following grounds: "(1) the terms of the section in question are clear and unambiguous, and Respondent is entitled to the benefits of the contract as a matter of law; (2) that Petitioner, as Landlord and Drafter of the Lease, bears the risk of mistake, if such mistake exists, and therefore the contract is enforceable as written; (3) that the amended lease is an integrated agreement and the Court cannot consider Parol Evidence; and (4) that if the contract clause is found to be unconscionable, reliance by Respondent, a third party and successor-in-interest to the contract, makes enforcement of the contract as written, proper."

The Court, after addressing each of these four points, seriatim, agreed with the respondent, and with the petitioner as well,[2] that indeed there was no material issue of fact to be tried, but the facts of the case and the law applicable thereto compelled the Court to grant summary judgment, not to respondent, but to petitioner, reforming the contract in two respects.

The respondent in the instant motion appears to have virtually abandoned these arguments contained in its initial motion; to have taken an entirely new tack. Respondent now argues that (a) there is, after all, a material issue of fact to be tried by the Court, making summary judgment improper; (b) that there was no mutual mistake as the Court found, and on which it based its opinion, because Temple Allen was not a party to the contract reformed by the Court; and (c) that Temple Allen is an innocent third party for

---

[2] See the Court's Order dated April 14, 1989.

value without notice who would be unjustly damnified if the Court grants relief from the mistake petitioner claims was made.

(a) — *SUR MATERIAL ISSUE OF FACT EXISTS PRECLUDING RIGHT TO SUMMARY JUDGMENT*

Respondent now reverses its earlier position and claims there is in fact a material issue of fact arising from the affidavits filed by the parties in the case.[3] These affidavits are, first, that of petitioner, dated February 4, 1989; and, secondly, that of his attorney, Roger Campbell, dated February 13, 1989, in which both affiants categorically state that a material mistake was made in reducing to writing the contract made by the parties, on January 27, 1983, to the substantial prejudice of the petitioner. Both of these affiants stated in their affidavit that the agreement of the parties in their amendment to the 1971 contract was to the effect that "In the event lessee International elects to exercise such option or options, then and in that event the increase in the monthly rental installments, taxes and insurance shall not exceed 80% of the rentals, taxes and insurance then being paid by International during the last month of the regular term of the sublease agreements. In the event that the second option period is exercised by International, then the increase in the rentals, taxes and insurance for said period shall not exceed 80% of the rentals, taxes and insurance then being paid by International during the last month of the first five (5) year option period"; but instead read: "In that event lessee International shall also have the option to renew the Sublease Agreement for two successive option periods of five (5) years each; provided always, that such extension of the Sublease shall be consistant with the requirements set forth in the Primary Lease. In the event lessee International elects to exercise such option or options, then and in that event the monthly rental installments, taxes and insurance shall not exceed 80% of the rentals, taxes and insurance then being paid by International during the last month of the regular term of the Sublease Agreements. In the event that the second option period is exercised by International, then the rentals, taxes and insurance for said period shall not exceed 80% of the rentals, taxes and insurance then being paid by International during the last month of the first five (5) year option period"; and that therefore,

---

[3] Another mutual mistake is the agreement is dated January 27, 1982, instead of January 27, 1983. This mistake was also corrected by the Court in its decree reforming the January 27, 1983, contract.

if the respondent elected to exercise the first five-year option, there would be a decrease in the rent paid as of July 31, 1988, instead of an increase not exceeding 80% of that rent, to the pecuniary loss to the petitioner of up to $162,000.00 for the first five-year option period, and probably an even greater loss to petitioner if respondent elected to exercise the second five-year option.

The only reply to these affidavits of petitioner and his attorney is the affidavit of Temple Allen, dated March 9, 1989. In not one of the ten paragraphs of Mr. Allen's affidavit does he state from his own personal knowledge that the statements of petitioner and his attorney, that the aforesaid mistake was in fact made, is not the truth. All he states is that, based on his conversation with his counsel, he "believed" the contract to be legally sufficient and [to be] enforceable as drafted by Attorney Campbell. But weighed by the standards prescribed by Federal Rules of Civil Procedure 56, Mr. Allen's affidavit is fatally deficient, does not rise to the level of controverting the declarations of fact of the petitioner and his attorney, for the simple reason that if the same Mr. Allen attempted to testify to these statements at trial, he would be incompetent to do so, as he would not be speaking from personal knowledge. Federal Rules of Civil Procedure 56(e); Wright, Miller & Kane, Federal Practice and Procedure, Section 2738. See also Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc., 1950, 70 S. Ct. 894, 896; 339 U.S. 827, 831; 94 L. Ed. 1312, all prescribing or holding to the effect that when affidavits are used to support or oppose a summary judgment motion, they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that affiant is competent to testify to the matters stated therein." Albeit Allen is the majority stockholder in respondent company at this time, the advice he received from his attorney or what he believed or did not believe as a result thereof is immaterial. The law will credit only hard fact, and nothing less. We quote ad verbum from FRCP 56(e):

> FORM OF AFFIDAVITS ... Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to

interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. [Underscoring ours.]

As petitioner so clearly states in his reply brief, Temple Allen is totally incompetent to state reliably anything relating to what the parties agreed should be the terms of the agreement as he entered the picture in 1983 for the first time when all the contract negotiations had already been a fait accompli, the terms thereof having been agreed to in 1982. See paragraph 1, page 4, of petitioner's reply brief.

Clearly, the person who is in a position to controvert the declarations of petitioner and his attorney in their affidavits, that the mistake was made, is Allen's predecessor in interest, Emile Dupont, who, like petitioner, signed the January 27, 1983, amendment, or any other officer or other person who was present during the negotiations. The Court will not opt to speculate why respondent has not presented such proof nearly one year after this lawsuit was commenced. We need and will go no further than to base our decision on the naked fact that such proof has not been submitted, and therefore cannot be credited by the Court.

■ Thus, it is indisputable that the declarations of the petitioner and his attorney that a mistake was made stand before us uncontroverted, and that there is no genuine issue of fact in this respect which makes the granting of summary judgment inappropriate.

### (b) — SUR WHETHER THE MISTAKE IS A MUTUAL OR JUST A UNILATERAL MISTAKE OF FACT

Respondent argues as its second point that the Court fails to prove that a mutual mistake exists; moreover, the Court has no authority in a summary judgment motion to decide an issue of fact.

■ It argues as its reason that the mistake was that of petitioner only, a unilateral, and not a mutual, mistake, the fact that Temple Allen, the successor in interest to majority stockholder, Emile Dupont, did not know, or have any reason to know, of such mistake. But how could Mr. Allen have such knowledge or reason, or be the

other party to a mistake alleged to be made in hammering out the terms of a contract made before he entered the picture? The only ones who can possibly be the correct parties to the mutual mistake are those who entered into the agreement at the time it was made. These are the petitioner, who signed for himself, and the respondent, represented at the time by Emile Dupont, Allen's predecessor in interest, who signed for the respondent.

As to respondent's argument that the Court has no authority in a summary judgment motion to decide an issue of fact, the short answer to that is that even respondent admitted in its brief there was no such issue, and the Court decided no such issue. All the Court did was to apply legal and equitable principles to a fact situation admitted to exist by both parties, and to grant the equitable remedy mandated thereby.

(c) — *SUR TEMPLE ALLEN BEING AN INNOCENT THIRD PARTY ENTITLED TO RECOVER BECAUSE OF RELIANCE ON THE AGREEMENT*

■ At the end of its first point, respondent argues that Temple Allen is a third party to the contract who relied on the wording of the contract as written, and is therefore a good faith purchaser for value without notice, and hence is entitled to judgment to the extent he was thus prejudiced. The Court does not agree. First, we see no one impleaded as a third party in the action. Secondly, it is clear that this argument has no merit as Temple Allen is nothing more than the purchaser of stock of respondent, making him the owner or majority stockholder of respondent. When Temple Allen made this purchase, the result was he acquired respondent with respondent's precise standing before the law at the time of purchase, with all the rights to which it was entitled and all the liabilities to which it was subject, including the liability to have the contract reformed, if in fact such liability existed at the time he purchased the company in favor of petitioner. Obviously, if the converse of this fact pattern were the case, the respondent who is the real party in interest, not Temple Allen, would have the same cause or right of action against the petitioner, to have the contract reformed by the Court to express the true intent of the parties. Clearly, it is not legally possible to escape one's legal liabilities by merely changing ownership or possession of assets. Obviously, if there was an equitable right to have the contract reformed while Emile Dupont owned the company, this right was not lost when Allen took the place of Dupont. Nor did this change convert Temple

204

Allen from just the majority stockholder in respondent, which Dupont was, to a third party for value, without notice, who could now totally disregard any obligations at law or in equity to which his new acquisition, respondent, was subject.

As to points 3 and 4 of respondent's brief, that the Court is not entitled to draw its own conclusion; rather the Court may only decide whether or not a genuine issue of fact exists, and the facts are disputed and therefore the granting of summary judgment is improper, we take the position that these arguments have been sufficiently addressed by the Court, as having no merit.

## IV. CONCLUSION

Order will therefore be entered denying respondent's motion for reconsideration, and that the Court enter a vacatur of its decree reforming the contract entered into by the parties hereto on January 27, 1983.

## ORDER

The Court having on even date herewith filed its memorandum opinion to the effect that an Order should be entered denying respondent's motion for reconsideration of the memorandum opinion entered by the Court on April 14, 1989, as amended April 21, 1989, and vacating its decree entered in conjunction therewith; and the Court being fully advised and satisfied in the premises, it is hereby

ORDERED, ADJUDGED AND DECREED that the aforesaid motion of respondent is denied.